# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Joshua Adam Kaplan

    Debtor.

_____/

ZB Verified Investments LLC,

    Plaintiff,

v.

Joshua Kaplan,

    Defendants.

_____/

Chapter 7
Case No. 25-48523-tjt

Hon. Thomas J. Tucker

Adv. P. Case No. 25-4234

## PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT

Plaintiff ZB Verified Investments LLC ("ZB"), by and through its attorneys, Taft Stettinius & Hollister LLP, hereby respectfully moves the Court for an Order, pursuant to Fed. R. Bankr. P. 7056/Fed. R. Civ. P. 56, awarding summary judgment in ZB's favor and against debtor, Joshua Kaplan (the "Defendant") as to all counts of its Complaint to Determine Dischargeability [Doc 1] (the "Complaint").

The basic facts are undisputed in this matter. Defendant personally guaranteed a $4.85 million loan by ZB to Divided Sky, LLC ("DSLLC"), a business owned and controlled by Defendant. Defendant made certain representations to ZB about the performance of the business, both before and after the loan was made. As of the

1

Maturity Date, the entire principal amount of the loan of $4,850,000, a monthly interest payment of $43,111.11 and accrued Default Interest were outstanding, due and payable. And neither the borrowers nor the guarantors paid ZB for all amounts due to ZB, despite their obligation to do so pursuant to the loan terms.

Indeed, and set forth in the accompanying Brief in Support, since the filing of ZB's initial Motion for Summary Judgment [Doc 24], the Circuit Court for the County of Oakland (the "State Court") entered Findings of Fact and Conclusions of Law and a Judgment dated April 28, 2026 (the "State Court Judgment") in *ZB Verified Investments, LLC v. Adam Kessler*, et al., Case No. 24-207081-CB (the "State Court Action"), following a bench trial. The State Court Judgment includes extensive findings of fact regarding Defendant's participation in the fraudulent scheme that induced ZB to loan $4,850,000 to DSLLC.

Although the State Court Action did not adjudicate Defendant's individual liability due to the automatic stay imposed by this Court, the State Court made detailed factual findings regarding Defendant's conduct, credibility, and role in the fraud, all of which are binding on Defendant in this proceeding under the doctrine of collateral estoppel. Defendant was a party in the State Court Action until the automatic stay was imposed by his filing of the above-captioned bankruptcy case (the "Bankruptcy Case"). Discovery had been fully conducted in the State Court Action prior to the commencement of Defendant's Bankruptcy Case. And Defendant

2

was a participant both as a witness and a party representative at trial in the State Court Action.

There are no genuine issues of material fact requiring a trial. Defendant's own statements and documents, and the State Court's findings made after a full bench trial and based on clear and convincing evidence, conclusively establish each element of nondischargeability under 11 U.S.C. §§ 523(a)(2)(A) and (B), 523(a)(4), and 523(a)(6) for which the lesser standard of proof of preponderance of the evidence applies. Defendant should not be granted a discharge of ZB's claims against him, and ZB is entitled to a nondischargeable judgment of at least the outstanding principal of $4,850,000, plus accrued interest, default interest, trebled to $20,361,678 as awarded by the State Court under MCL 600.2919a, costs, and attorney's fees.

Plaintiff also seeks summary judgment in its favor dismissing Defendant's affirmative defense of usury. The State Court has already determined, after full briefing and trial, that as a matter of law, the Note is not facially usurious, that the acceleration clause does not render the Note usurious, that the membership interest in Verified Health is not a disguised fee or interest charge, and that the Wrongful-Conduct Rule defense fails. These determinations of law are likewise entitled to preclusive effect.

3

Pursuant to Local Rule 7.1(a), counsel for ZB sought concurrence in the relief requested herein from counsel for Defendant by an email dated April 29, 2026. Defendant's counsel responded to the April 29, 2026 email and denied ZB's request for relief.

WHEREFORE, for the reasons set forth in the accompanying Brief in Support of Plaintiff's Renewed Motion for Summary Judgment, ZB respectfully requests that the Court (1) enter summary judgment in ZB's favor on all counts of its Complaint to Determine Dischargeability; (2) determine that ZB's claims against Defendant are nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (B), 523(a)(4), and 523(a)(6); (3) dismiss Defendant's affirmative defense of usury; (4) enter a nondischargeable judgment against Defendant in an amount not less than $20,361,678 (representing compensatory damages of $6,787,226, trebled pursuant to MCL 600.2919a for statutory stealing), plus accrued interest, default interest, costs, and reasonable attorney's fees, or in the alternative, in an amount not less than $4,850,000, plus accrued interest, default interest, costs, and reasonable attorney's fees; and (5) award such other and further relief as the Court deems just and proper.

Respectfully submitted,

**TAFT STETTINIUS & HOLLISTER LLP**

/s/ Kimberly Ross Clayson
Kimberly Ross Clayson(P69804)
Ethan R. Holtz (P71884)
Emily M. Mayer (P78956)
27777 Franklin Road, Suite 2500
Southfield, MI 48034
(248) 351-3000
kclayson@taftlaw.com
eholtz@taftlaw.com
emayer@taftlaw.com
*Counsel for ZB Verified Investments, LLC*

Dated: May 18, 2026

5

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Joshua Adam Kaplan

  Debtor.

_____/

ZB Verified Investments LLC,

   Plaintiff,

v.

Joshua Kaplan,

   Defendants.

_____/

Chapter 7
Case No. 25-48523-tjt

Hon. Thomas J. Tucker

Adv. P. Case No. 25-4234

## **AMENDED BRIEF IN SUPPORT OF MOTION FOR** <u>**SUMMARY JUDGMENT**</u>

i

# ISSUES PRESENTED

Should the Court grant summary judgment for Plaintiff and except its claims against Defendant from discharge under 11 U.S.C. §§ 523(a)(2)(A) and (B), where the State Court has found, by clear and convincing evidence after a full bench trial, that Defendant knowingly made false representations and participated in a fraudulent scheme that induced Plaintiff to loan $4,850,000, and those findings are entitled to collateral estoppel effect in this proceeding?

Plaintiff states: Yes.

Should the Court grant summary judgment for Plaintiff and except its claims against Defendant from discharge under 11 U.S.C. § 523(a)(4), where the State Court has found that Defendant and his co-conspirators obtained ZB's funds through false pretenses and diverted those funds to purposes other than those represented, constituting statutory stealing under MCL 600.2919a?

Plaintiff states: Yes.

Should the Court grant summary judgment for Plaintiff and except its claims against Defendant from discharge under 11 U.S.C. § 523(a)(6), where the State Court has found that Defendant willfully and maliciously participated in a fraudulent scheme that caused injury to Plaintiff?

Plaintiff states: Yes.

Should the Court grant summary judgment dismissing Defendant's affirmative defense of usury, where the State Court has already determined that the underlying loan was not facially usurious, the acceleration clause did not render it usurious, and the Wrongful-Conduct Rule defense fails?

Plaintiff states: Yes.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY (L.R. 7.1(d)(2))</u>

11 U.S.C. §§ 523(a)(2)(A)-(B), (a)(4), (a)(6)

*Al Qari v. Am. Steamship Co.*, 689 F. Supp. 3d 468 (E.D. Mich. 2023)

*Amos v. PPG Indus.,* 699 F.3d 448 (6th Cir. 2012)

Fed. R. Civ. P. 56(a)

Fed. R. Bankr. P. 7056

*Bldg. Comm., Inc. v. Rahaim (In re Rahaim)*, 324 B.R. 29 (Bankr.E.D.Mich.2005)

*Dearborn Heights Sch. Dist. No. 7 v. Wayne Cnty. MEA/NEA*, 233 Mich. App. 120, 592 N.W.2d 408 (1998)

*Field v. Mans*, 516 U.S. 59 (1995)

*Grogan v. Garner*, 498 U.S. 279 (1991)

*In re Musilli*, 398 B.R. 447 (E.D. Mich. 2008), aff'd on other grounds, 379 F. App'x 494 (6th Cir. 2010)

*In re Skymark Props. II, LLC*, 597 B.R. 363 (2019)

*In re Strozewski*, 458 B.R. 397 (Bankr. W.D. Mich. 2011)

*Kawaauhau v. Geiger*, 523 U.S. 57 (1998).

*Leaf v. Refn*, 742 F. App'x 917 (6th Cir. 2018)

*Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455 (6th Cir. 1999)

*Matter of Sneed*, 13 B.R. 151, 153 (Bankr. S.D. Ohio 1981)

*Mecosta Cnty. Med. Ctr. v. Metro. Grp. Prop. & Cas. Ins. Co.,* 509 Mich. 276, 983 N.W.2d 401 (2022).

*Nixon v. Audley (In re Audley)*, 275 B.R. 383 (B.A.P. 10th Cir. 2002)

*People v. Reigle*, 223 Mich. App. 34 (1997)

*Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277 (6th Cir.

1998)

*Robinson v. Callender (In re Callender)*, 212 B.R. 276 (Bankr. W.D. Mich. 1997)

*Shaw Inv. Co. v. Rollert*, 159 Mich. App. 575 (1987)

*St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172

## INTRODUCTION

This case is straightforward, as all material facts have been established by Defendant's own statements and documents, and the State Court Judgment's Findings of Fact. On April 28, 2026, following a bench trial in the State Court Action, the State Court entered judgment against Defendant's co-conspirators, Adam Kessler ("Kessler"), Divided Sky, LLC ("DSLLC"), Supply Line International, LLC ("SLI"), and Supply Line International Medical, LLC ("SLIM"), awarding compensatory damages of $6,787,226, trebled to $20,361,678 under MCL 600.2919a for statutory stealing. Based on the same evidence before this Court, the State Court made extensive findings of fact regarding Defendant's personal conduct, in his party representative and witness capacity, including findings that Defendant knowingly made false representations, participated in a fraudulent scheme, and acted in concert with Kessler and the entity Defendants to defraud ZB.

Although the State Court Action was stayed as to Defendant due to his Bankruptcy Case, he was a party to the State Court Action until discovery closed and he served as a witness and a party representative at trial. This Court can take judicial notice of the extensive findings of fact that the State Court made, which conclusively establish Defendant's liability. Moreover, this case presents a

1

straightforward application of collateral estoppel to bar the discharge of Defendant's[1] debt to ZB.

Critically, the State Court's findings were made after a full and fair trial on the merits, by clear and convincing evidence, a standard that exceeds the preponderance of the evidence standard applicable to nondischargeability determinations under Section 523(a)(2) through (6) of the Bankruptcy Code. The State Court specifically assessed Defendant's credibility as a trial witness, finding that his testimony "swung wildly between 100% accurate on immaterial matters to outright, bald face lies on key issues" and that the Defendant "has been caught perpetuating a fraudulent scheme and was attempting to evade responsibility for the same." These findings, which Defendant had a full and fair opportunity to contest at trial (where he testified), are entitled to collateral estoppel effect and conclusively establish each element of ZB's nondischargeability claims.

Moreover, the State Court has already rejected the very usury defense that Defendant asserts in this proceeding, holding that the Note is not facially usurious, that the unexercised acceleration clause does not render it usurious, that the membership interest in Verified Health is not a disguised interest charge, and that the Wrongful-Conduct Rule is inapplicable. This Court should take judicial notice

---

[1] Defined terms shall have the same meaning as ascribed to them in the accompanying Motion.

2

of these factual and legal determinations, which further foreclose Defendant's only defense.

There are no genuine issues of material fact, and ZB is entitled to judgment as a matter of law on all counts of its Complaint and on the dismissal of Defendant's usury defense.

**STATEMENT OF FACTS**

On March 5 and March 6, Defendant appeared at trial before the State Court as a witness in his individual capacity and as a party representative of the State Court defendants, SLI, SLIM and DSLLC (the "State Court Trial"). Thereafter, on April 29, 2026, the State Court entered the State Court Judgment in which it held that Defendant made various false representations and participated in defrauding Plaintiff. The below summary of facts are a summary of the State Court's Findings of Fact, along with supporting documents.

In or about April 2023, Defendant and Kessler concocted a scheme to profit from the COVID-19 pandemic by establishing a web of relationships between various companies to profit on the sale of over-the-counter COVID-19 test kits. Tab 1, State Court Judgment, Findings of Fact ("FOF") at 6. The scheme involved (1) a website operated by Verified Health (owned by Defendant and Kessler) for consumers to order test kits, (2) advertising through DSLLC, (3) billing the federal government through Orchard Laboratories Corporation ("Orchard"), and (4) using

3

SLI and SLIM (managed and at least partially owned by Defendant) to fill various functions. *Id.* at 6-7.

Defendant and Kessler, acting on behalf of the entity Defendants, convinced ZB to make a loan of $4,850,000 to DSLLC through various communications, including a confidential offer letter (the "Offer Letter"). FOF at 7; Tab 2. The State Court found that the Offer Letter contained the following lies that Defendant and Kessler knew were lies at the time they were made: (a) that they would create a "Direct consumer program paid for by government (Medicare and Medicaid)" when in truth there was no Medicaid program (the "Aid Program") and no intention to create one; (b) that "Verified Health has been tasked to garner subscriptions from both Medicare and Medicaid patients throughout the country" when in truth it was not tasked with Medicaid patients; and (c) that "[g]oing forward, the opportunity for Medicaid is even greater, because of the longer lasting nature of the program" when in truth they were projecting no Aid Program sales. FOF at 7-8; see also Tab 2; Tab 3 at 27:2-21. As the State Court found, all of these lies were "intended to induce ZB into entering the loan transaction." FOF at 8.

Thereafter and based on Defendant and Kessler's misrepresentations, on April 27, 2023, ZB funded the loan of $4,850,000 to DSLLC, evidenced by a Promissory Note (the "Note" attached as Tab 4) signed by Defendant as Manager of DSLLC. FOF at 9. The Note provided for interest at 20 percent per annum, a 12-month

4

maturity, an acceleration option after 90 days (with interest reduced to 12 percent upon exercise), default interest of an additional 3 percent, a savings clause, and an obligation to pay costs of collection including reasonable attorney's fees. *Id.* at 9-11; Tab 4. The payment was guaranteed by Defendant, Kessler, and Sami Ahmad ("Ahmad") pursuant to a Guaranty (the "Guaranty") executed on the same date. FOF at 12; Tab 5.

After the loan was funded, Defendant and Kessler consistently told ZB's representatives that all was going to plan and that the scheme was collecting millions of dollars from both the Medicare program (the "Care Program") and the nonexistent Aid Program. FOF at 13; see also Tab 6. On June 23, 2023, a contractor of the Centers for Medicare & Medicaid Services ("CMS") issued a Notice of Suspension of Part B Medicare Payments to Orchard on "credible allegations of fraud." FOF at 13. All Care Program payments had been frozen as of June 15, 2023. *Id.* at 14.

On July 5, 2023, Defendant sent ZB a written memorandum falsely representing that the Care Program had resulted in 350,000 recipients signing up, that "Verified Health exceeded its revenue projections," and that Orchard had "started the Medicaid Program with a slow ramp" and that "payment in full has been received on the billings for Michigan." FOF at 14; Tab 7, July 5, 2023 Email; Tab 8, July 5, 2023 Memorandum. And on July 10, 2023, Defendant sent ZB a Project

5

Income Statement showing net revenue of $58,319,293 and net income of $21,176,591. FOF at 15.

Neither Defendant nor Kessler disclosed the CMS investigation or the Notice of Suspension to ZB. Had ZB known of the suspension, it would have exercised its acceleration option, which became available on July 27, 2023. FOF at 15. At that time, DSLLC had sufficient funds to cover the option, and other lenders who exercised parallel options during July and August 2023 were repaid in full. *Id*. Instead, by the end of August 2023, DSLLC transferred over $6,000,000 to SLI and SLIM, "all but eliminating the ability for Divided Sky to fully repay ZB." *Id*.

In early 2024, Defendant assured ZB in a phone call that the CMS investigation was not going to affect the viability of the scheme, that CMS had to pay approximately 96 percent of the claims, and that there was more than enough money to pay back the lenders. FOF at 15-16. These representations were false. *Id*.

The Maturity Date of the Note was April 26, 2024, and DSLLC failed to pay the principal amount plus accrued interest. FOF at 16. The State Court found that: (a) Orchard never sold a single COVID-19 OTC test under the Aid Program, never billed Medicaid, and no Aid Program was ever started [*id.*]; (b) DSLLC and Orchard never actually entered into an agreement about how DSLLC was going to be paid for services, and under federal guidelines, DSLLC was likely unable to obtain a profit [*id.*]; (c) all of the lies were made by Defendant and Kessler with each other's

6

knowledge, on behalf of, coordinated with, and in concert with DSLLC, SLI, and SLIM, knowing that they were lies, with the intention of inducing ZB into loaning the money and not asking to be repaid [*id.*]; (d) ZB reasonably relied upon those lies [*id.*]; and (e) ZB's funds were not used for the purpose of funding the scheme but were used for the Defendant's and the State Court Action defendants' own purposes [*id.* at 17].

The State Court made specific credibility findings regarding Defendant, stating that his "credibility swung wildly between 100% accurate on immaterial matters to outright, bald face lies on key issues," that Defendant's "incentive was to avoid liability and salvage his now tainted reputation," and that the Defendant "has been caught perpetuating a fraudulent scheme and was attempting to evade responsibility for the same." FOF at 5. The State Court afforded Defendant's testimony "no weight" and found it "incredible" unless the court indicated otherwise in the State Court Judgment. *Id.*

The State Court further found that Defendant and Kessler "treated each other and their affiliated entities as one blob entity," did not maintain corporate formalities, "played loose and fast with finances and company governance," and "purposefully violated the rules applicable to health care reimbursements from the federal government using their various entities as hollow chess pieces." FOF at 17-

7

18. The State Court pierced the corporate veil, finding SLI and SLIM to be alter egos of DSLLC. *Id.*

The State Court awarded compensatory damages of $6,787,226 (principal and interest as of the date of trial), trebled to $20,361,678 under MCL 600.2919a for statutory stealing, jointly and severally against Kessler, DSLLC, SLI, and SLIM. Tab 1, State Court Judgment at 56.

## LEGAL STANDARD

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. The moving party must present evidence on which the trier of fact could find for the movant. The non-moving party must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, and the "mere possibility" of a factual dispute does not suffice to create a triable case. *Al Qari v. Am. Steamship Co.*, 689 F. Supp. 3d 468, 478 (E.D. Mich. 2023).

"Federal courts may take judicial notice of proceedings before other federal courts and state courts of record." *In re Musilli*, 398 B.R. 447, 453 (E.D. Mich. 2008), *aff'd on other grounds*, 379 F. App'x 494 (6th Cir. 2010); see also *St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir.1979) ("it has been held that federal courts, in appropriate circumstances, may

take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

Similarly, and under the doctrine of collateral estoppel (issue preclusion), a bankruptcy court may rely on findings made in a prior state court proceeding to establish the elements of nondischargeability under 11 U.S.C. § 523(a). *Grogan v. Garner*, 498 U.S. 279, 284 n11 (1991). "When a federal court reviews the preclusive effect of a state court judgment, it is directed by the mandates of the Full Faith and Credit Statute to look to the preclusion law of the state in which the judgment was rendered." *Nixon v. Audley (In re Audley)*, 275 B.R. 383, 387 (B.A.P. 10th Cir. 2002) (internal citations omitted). The Supreme Court has expressly held that collateral estoppel applies in discharge exception proceedings. *Grogan*, 498 U.S. at 284-285.

Under Michigan law, collateral estoppel applies when: (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the same parties or their privies had a full and fair opportunity to litigate the issue; and (3) there is mutuality of estoppel. *Mecosta Cnty. Med. Ctr. v. Metro. Grp. Prop. & Cas. Ins. Co.,* 509 Mich. 276, 283, 983 N.W.2d 401, 406 (2022). "[I]n certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit." *Amos v. PPG Indus., 699 F.3d 448, 452* (6th Cir. 2012).

## ARGUMENT

**I.     This Court Should Take Judicial Notice of the State Court Judgment's Findings of Fact**

Federal Rule of Civil Procedure 201 provides that a court may "judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A state court judgment meets this criteria, and can be judicially noticed. *In re Musilli*, 398 B.R. at 453. Judicial notice may be taken at any stage of a proceeding. *Id*. At that point, and "[o]nce a court record has been judicially noticed, the issue then is whether or not the evidence then before the Bankruptcy Court is sufficient to find a violation of the federal law applicable." *Matter of Sneed*, 13 B.R. 151, 153 (Bankr. S.D. Ohio 1981).

Here, the State Court issued Findings of Fact that should be judicially noticed. As explained in more depth below, the Findings of Fact conclusively establish that there is no genuine dispute as to any material fact, and therefore Plaintiff is entitled to Judgment on its Complaint as a matter of law. It is undisputable that Defendant, individually and as agent for DSLLC, Supply, and SLIM, induced ZB to loan DSLLC $4,850,000 under false pretenses, false representations and/or actual fraud.

Indeed, and even if this Court does not adopt the conclusions of law by the State Court (it should, as explained below), the conclusively established facts will lead to the same conclusion of nondischargeability.

**II.** **The State Court Judgment's Findings of Fact Are Entitled to Collateral Estoppel Effect in This Proceeding.**

Beyond taking judicial notice of the facts established by the State Court Judgment, the State Court Judgment satisfies each element of collateral estoppel, and Plaintiff is entitled to Judgment as a matter of law. First, the questions of fact essential to ZB's nondischargeability claims – including whether Defendant knowingly made false representations, whether those representations were made with intent to deceive, whether ZB justifiably relied on them, and whether ZB suffered damages – were actually litigated and determined by the State Court after a full bench trial. The State Court's findings were made by clear and convincing evidence, which exceeds the preponderance of the evidence standard applicable to nondischargeability determinations. See *Grogan*, 498 U.S. at 291.

Second, Defendant had a full and fair opportunity to litigate these issues, notwithstanding the imposition of the automatic stay. Before filing his bankruptcy petition, Defendant was a named defendant in the State Court Action, was represented by counsel, and participated in discovery which had closed prior to commencement of Defendant's Bankruptcy Case. And, critically, Defendant appeared and testified at the State Court Trial – the very proceeding at which the State Court made its findings of fact determining that Defendant and the State Court defendants defrauded ZB – not only in his individual capacity but also as a co-manager of DSLLC, co-owner of Verified Health, and manager and partial owner of

11

SLI and SLIM, the very entities against whom judgment was entered. The State Court's credibility determinations were based in substantial part on its direct observation of Defendant's testimony. Defendant thus had the opportunity to present evidence, cross-examine witnesses through the co-defendants' counsel, and contest the factual issues that the State Court resolved. In sum, Defendant's role, representations and participation in the underlying transaction essential to the FOF resulting in the State Court Judgment which contains substantial findings of fraud on account of Defendant's own material misrepresentations and wrongful conduct.

Third, mutuality of estoppel is satisfied. ZB was a party to the State Court Action, and Defendant – as a named defendant in the State Court Action until discovery had closed, a party representative for the duration of the State Court Trial and a testifying witness at trial, and party who made the fraudulent representations identified in the Judgment, should be bound by the State Court's findings. *See, e.g., Bldg. Comm., Inc. v. Rahaim (In re Rahaim),* 324 B.R. 29, 37–38 (Bankr.E.D.Mich.2005) (defendant answered complaint and participated in the state court action providing sufficient participation to give a state court default judgment, which was entered for failure to appear at a pretrial conference, preclusive effect); *Robinson v. Callender (In re Callender),* 212 B.R. 276, 280 (Bankr.W.D.Mich.1997) (defaulting party actually litigated previous action by filing an answer and substantially participating in the defense of underlying state court action right up

until eve of trial); *In re Strozewski*, 458 B.R. 397, 404–05 (Bankr. W.D. Mich. 2011) ("Here, the Debtor retained an attorney in the state court action, filed an answer, participated in discovery, attended mediation, and filed two motions for summary disposition. This court finds that these actions constitute more than sufficient participation in the state court action to satisfy the 'actually litigated' requirement.").

Likewise, as a party representative at the State Court Trial, Defendant's interests were fully aligned with those of the State Court Action co-defendants, Kessler, DSLLC, SLI, and SLIM, who vigorously contested every element of ZB's claims at trial. See *Leaf v. Refn*, 742 F. App'x 917, 923 (6th Cir. 2018) ("In certain limited circumstances, a nonparty may be bound by a judgment when he or she was 'adequately represented by someone with the same interests who was a party' to the earlier suit.)(quoting *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 798 (1996)); *Dearborn Heights Sch. Dist. No. 7 v. Wayne Cnty. MEA/NEA*, 233 Mich. App. 120, 127, 592 N.W.2d 408, 412 (1998) ("a nonparty to an earlier proceeding will be bound by the result if that party controlled the earlier proceeding or if the party's interests were adequately represented in the original matter.")(internal citations omitted). Here, and beyond the fact that Defendant was a party-representative and witness at trial, Defendant's interests were adequately represented by his co-Defendants.

13

The State Court found that the "cold, hard reality is that Kaplan and Kessler treated each other and their affiliated entities as one blob entity." FOF at 17. Indeed, "Kaplan managed Divided Sky, SLI, and SLIM" who were found to be liable in the matter. *Id*. "Kessler, Divided Sky, SLI, and SLIM" were found, as a matter of law, to have been "engaged in a Civil Conspiracy." *Id*. at 47. And "Kessler, Divided Sky, SLI, and SLIM acted in concert with Kaplan to concoct and implement the scheme." *Id*. at 52. At trial, Defendant and Kessler had the same interest in fighting these claims, and lost. Accordingly, and under these circumstances, Defendant cannot credibly contend that his interests were not adequately represented at trial or that he lacked a sufficient opportunity to contest the issues now before this Court.

## III. Defendant's Debt to ZB Is Nondischargeable Under 11 U.S.C. § 523(a)(2)(A).

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To establish nondischargeability under this provision, a plaintiff must prove that: (1) the debtor made a false representation; (2) at the time, the debtor knew it was false or made it with gross recklessness as to its truth; (3) the debtor intended to deceive the creditor; (4) the creditor justifiably relied on the false representation; and (5) the

14

creditor's reliance was the proximate cause of loss. *Rembert v. AT&T Universal Card Servs.* (In re Rembert), 141 F.3d 277, 280-81 (6th Cir. 1998).

The uncontested facts, and the State Court's findings, conclusively establish each element of Section 523(a)(2)(A) of the Bankruptcy Code. Defendant made material false representations – including that the loan proceeds would fund a Medicaid program that never existed and was never intended to exist, that the business was generating millions in revenue, and that the CMS investigation was immaterial, and that Defendant, in particular, knew these representations were false when made. FOF at 6-8; Tab 2; Tab 3. These misrepresentations were made with the intention of inducing ZB to lend money and to refrain from exercising its contractual right to accelerate repayment. *Id.* at 8.  ZB "in fact reasonably relied upon those lies (by Defendant) when lending the money and not exercising its rights under the loan documents to ask for repayment of the principal until the maturity date." *Id.* at 16. And, as the State Court found, ZB suffered millions of dollars in losses as a direct result. *Id.* at 17.

Accordingly, as a matter of law, Defendant's debt to ZB was obtained by Defendant's false pretenses, false representations, and actual fraud, and is nondischargeable under Section 523(a)(2)(A) of the Bankruptcy Code.

**IV. Defendant's Debt to ZB Is Nondischargeable Under 11 U.S.C. § 523(a)(2)(B).**

Section 523(a)(2)(B) of the Bankruptcy Code excepts from discharge any debt obtained by "use of a statement in writing – (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B). Unlike Section 523(a)(2)(A), which requires only justifiable reliance, Section 523(a)(2)(B) requires reasonable reliance. *Field v. Mans*, 516 U.S. 59, 74-75 (1995).

Defendant's own statements, and the State Court's findings, conclusively establish each element of Section 523(a)(2)(B). First, Defendant caused materially false written statements to be made and published, including the Offer Letter, the July 5, 2023 memorandum, and the Project Income Statement, all of which contained material misrepresentations regarding the existence and profitability of the Aid Program, the revenue generated by the scheme, and the financial condition and prospects of DSLLC. FOF at 7-9; Tab 2; Tab 8; Tab 9. Second, these written statements concerned the financial condition of DSLLC, an insider entity of which Defendant was co-manager, and its purported Medicaid business. *Id*. Third, as the State Court found, ZB "in fact reasonably relied upon those lies when lending the money and not exercising its rights under the loan documents to ask for repayment

16

of the principal until the maturity date." FOF at 16. Fourth, as the State Court found, the lies were made "with the intention of inducing ZB into loaning the money and not asking to be repaid," and Defendant was "caught perpetuating a fraudulent scheme." *Id*. at 5, 16.

Accordingly, Defendant's documents and the State Court's findings establish, as a matter of law, that Defendant's debt to ZB was obtained by use of materially false written statements respecting the financial condition of Defendant's insider entities, made with intent to deceive ZB and upon which ZB reasonably relied, and is therefore nondischargeable under Section 523(a)(2)(B) of the Bankruptcy Code.

## V. Defendant's Debt to ZB Is Nondischargeable Under 11 U.S.C. § 523(a)(4).

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Embezzlement under § 523(a)(4) requires proof that the debtor appropriated funds for his own benefit through fraudulent intent or deceit. Larceny requires proof that the debtor wrongfully took property with fraudulent intent.

As the State Court found, Defendant and his co-conspirators "stole Verified Investors' funds via false pretenses for their own uses" and that their conduct "squarely falls within the crime of false pretenses as defined by MCL 750.218." Tab 1, State Court Judgment at 47. Under Michigan law, obtaining property by false pretenses – as codified in MCL 750.218 – is a species of larceny. *People v. Reigle*,

223 Mich. App. 34, 39-40 (1997). The State Court's express finding that Defendant's conduct "squarely falls within the crime of false pretenses as defined by MCL 750.218" thus establishes the larceny element of § 523(a)(4) as a matter of law.

The State Court further found that "ZB's funds were not used for the purpose of funding the scheme. They were used for the Defendants' own purposes rather than those designated in the Offer Letter." FOF at 17. These findings conclusively establish that Defendant obtained ZB's funds through false pretenses and converted them to his own use, rendering the debt nondischargeable under Section 523(a)(4) of the Bankruptcy Code.

**VI.     Defendant's Debt to ZB Is Nondischargeable Under 11 U.S.C. § 523(a)(6).**

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." A "willful" injury requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). A "malicious" injury requires conduct that is wrongful and done intentionally without just cause or excuse. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999). The State Court's findings of fact establish both elements. The State Court found that Defendant knowingly made false representations [FOF at 7-8], knowingly concealed the CMS investigation [*Id*. at 14-16], knowingly participated in diverting ZB's loan proceeds to unauthorized

18

purposes [*Id*. at 17], and acted in concert with Kessler and the entity Defendants to perpetuate a fraudulent scheme, all with the knowledge that injury to ZB was substantially certain to result [*Id*. at 17-18]. The State Court characterized the scheme as "pervasive" and "dishonest" and found that Defendant was "caught perpetuating a fraudulent scheme." *Id.* at 5. These findings establish that Defendant's conduct was both willful and malicious, rendering the debt nondischargeable under Section 523(a)(6) of the Bankruptcy Code.

**VII.   Defendant's Affirmative Defense of Usury Fails as a Matter of Law.**

Defendant's affirmative defense cited throughout his Answer to ZB's Complaint, that the Note is usurious, has been squarely rejected by the State Court after full briefing and trial. The State Court held that: (a) the Note is not facially usurious, as the maximum contractual interest rate (20% plus 3% default interest) does not exceed the 25 percent statutory limit applicable to business entities under MCL 438.61 [FOF at 36-37]; (b) the unexercised acceleration clause does not render the Note usurious, because a loan cannot be facially usurious based upon a contingent future event that never occurs [*Id.* at 37-38]; (c) ZB's 2.425 percent membership interest in Verified Health was not a hidden fee or interest charge and therefore has "nothing to do with the issue of usury" [*Id.* at 38]; and (d) the Wrongful-Conduct Rule defense is inapplicable because it is entirely predicated on the failed usury defense [*Id*. at 41].

19

These determinations are entitled to collateral estoppel as well. The usury issue was fully litigated in the State Court Action, Defendant had a full and fair opportunity to present his defense (and his co-defendants vigorously did so), and the State Court rendered a final judgment on the merits. Defendant cannot relitigate this issue in this proceeding. Accordingly, Defendant's usury defense should be dismissed as a matter of law.

Moreover, even if the Court were to find the Note usurious – which it should not – a usurious contract is not void under Michigan law. As the State Court held, the "savings clause could have applied to salvage the Promissory Note" but that was a "moot point" because the Note was not facially usurious and no contingency made it usurious, either. FOF at 36; see also *Shaw Inv. Co. v. Rollert*, 159 Mich. App. 575, 580 (1987); *In re Skymark Props. II, LLC*, 597 B.R. 363, 390 (2019) (holding that "even if the Loan was in violation of the Michigan usury statute, the Lender would still be entitled to recover repayment of the full principal amount of its Loan"). The only consequence of usury would be forfeiture of interest; ZB would still be entitled to recover the full principal amount of $4,850,000. Accordingly, even under Defendant's best-case scenario, ZB's claim for at least the principal amount would remain nondischargeable.

## VIII. The Amount of ZB's Nondischargeable Claim.

The State Court awarded compensatory damages of $6,787,226 as of the date of trial, consisting of outstanding principal and accrued interest. The State Court also awarded treble damages, bringing the judgment to $20,361,678 under MCL 600.2919a, costs, and attorney's fees.

ZB respectfully requests that this Court enter a nondischargeable judgment in at least the amount of the outstanding principal of $4,850,000, plus all accrued interest, default interest, costs, and reasonable attorney's fees as provided by the Note and Guaranty. In the alternative, ZB requests that this Court adopt the State Court's damages calculation of $20,361,678, plus applicable post-judgment interest.

## CONCLUSION

For the foregoing reasons, ZB respectfully requests that the Court: (1) enter summary judgment in ZB's favor on all counts of its Complaint to Determine Dischargeability; (2) determine that ZB's claims against Defendant are nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (B), 523(a)(4), and 523(a)(6); (3) dismiss Defendant's affirmative defense of usury; (4) enter a nondischargeable judgment against Defendant in an amount not less than $20,361,678 (representing compensatory damages of $6,787,226, trebled pursuant to MCL 600.2919a for statutory stealing), plus accrued interest, default interest, costs, and reasonable attorney's fees, or in the alternative, in an amount not less than

$4,850,000, plus accrued interest, default interest, costs, and reasonable attorney's fees; and (5) award such other and further relief as the Court deems just and proper.

Respectfully submitted,

**TAFT STETTINIUS & HOLLISTER LLP**

/s/ Kimberly Ross Clayson
Kimberly Ross Clayson (P69804)
Ethan R. Holtz (P71884)
Emily M. Mayer (P78956)
27777 Franklin Road, Suite 2500
Southfield, MI 48034
(248) 351-3000
kclayson@taftlaw.com
eholtz@taftlaw.com
emayer@taftlaw.com
*Counsel for ZB Verified Investments, LLC*

Dated: May 18, 2026