Joshua Adam Kaplan

    Debtor.

_____/

ZB Verified Investments LLC,

      Plaintiff,

v.

Joshua Kaplan,

      Defendants.

_____/

Chapter 7
Case No. 25-48523-tjt

Hon. Thomas J. Tucker

Adv. P. Case No. 25-4234

## PLAINTIFF'S REPLY IN SUPPORT AMENDED MOTION FOR <u>SUMMARY JUDGMENT</u>

Plaintiff, ZB Verified Investments, LLC ("ZB" or "Plaintiff") through its undersigned counsel states as follows for its Reply to Defendant Joshua Kaplan's ("Defendant") Response in Opposition (the "Response") [Doc 68] to Plaintiff's Amended Motion for Summary Judgment (the "Motion"):

## <u>INTRODUCTION</u>

Defendant's Response rests almost entirely on the legally incorrect premise that the State Court Judgment must have been entered against him for collateral estoppel to apply. The law is unequivocal: collateral estoppel is *issue* preclusion, requiring a common identity of issues, and interests, not necessarily parties.

Establishing collateral estoppel requires a "substantial identity of interests" and a "working functional relationship" between the parties. *Adair v. State*, 470 Mich. 105, 122 (2004). That standard is met here in multiple independent ways: (1) Defendant controlled the prior proceedings as a party representative, therefore his interests were adequately represented, *Dearborn Heights Sch. Dist. No. 7 v. Wayne Cnty. MEA/NEA*, 233 Mich. App. 120, 127 (1998); (2) Defendant was in contractual privity with ZB, and his co-defendants, SLI, SLIM, DSLLC and Kessler through the personal guaranty, *Sloan v. Madison Heights*, 425 Mich. 288, 295 (1986); (3) Defendant as an agent of the entity defendants, is bound by the judgments against them, *Mitsubishi Aircraft Int'l, Inc. v. Dukay Air Ltd.*, 772 F.2d 907 (6th Cir. 1985); and (4) the State Court found veil piercing and alter ego liability as to Defendant, Kessler, and the entity defendants, *Trs. of Operating Eng'rs Loc. 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368, 383 (6th Cir. 2019). Any one of these defeats Defendant's argument.

Defendant's related argument that mutuality of estoppel fails because he was not a party to the Judgment is equally unavailing. Defendant's substantive participation as a party representative and his privity with the named State Court defendants are sufficient to bind him. *See Bldg. Comm., Inc. v. Rahaim (In re Rahaim),* 324 B.R. 29, 35, 37–38 (Bankr. E.D. Mich. 2005).

2

Defendant also fails to cite any law precluding judicial notice of the State Court's adjudicative findings, which are not "subject to reasonable dispute" under Rule 201(b) because they were made after adversarial testing, including Defendant's own testimony, on a higher burden of proof than applicable here.

For each of these reasons, Summary Judgment should be granted for Plaintiff.

## ARGUMENT

### I. Defendant Fails to Dispute that State Court's Findings of Fact and Judgment, Now Final, Are Entitled to Collateral Estoppel Effect.

### A. The State Court Judgment is a final order.

On June 18, 2026, the State Court amended its April 28, 2026 Findings of Fact and Judgment to provide that "this resolves the last pending claim and closes the case," rendering it a final judgment. **Exhibit WW to Response.** Moreover, under both Michigan and federal law, a pending appeal does not affect preclusive effect. See *Eisfelder v. Michigan Dept. of Natural Resources*, 847 F.Supp. 78, 83 (W.D. Mich. 1993); *Crawford v. Chabot*, 202 F.R.D. 223, 226 (W.D. Mich. 1998). The Judgment is entitled to full preclusive effect.

### B. Defendant fails to rebut the elements of collateral estoppel.

Defendant incorrectly claims there is no "valid and final judgment" as to Defendant, defeating collateral estoppel. Response at 7-8, 11-12. Michigan law does not require entry of a Judgment against Defendant; it requires only that "a question of fact essential to the judgment was actually litigated and determined by a valid and

3

final judgment." *Monat v. State Farm Ins. Co.,* 469 Mich. 679, 682–84 (2004); *Wilcox v. Sealey*, 132 Mich. App. 38, 47 (1984). All that is required is a "substantial identity" of interests. *Dearborn Heights*, 233 Mich. App. at 127-128.

Privity between a party and a non-party requires a 'substantial identity of interests' and a 'working functional relationship' in which the non-party's interests are presented and protected. *Adair*, 470 Mich. at 122. In *Adair*, the Michigan Supreme Court held that taxpayers not party to an earlier Headlee Amendment suit were bound because their interests were "adequately represented by the plaintiffs" in the prior case. *Id.* at 123. See also *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106, 1109 (6th Cir. 1981) (privity encompasses those with "a sufficiently close relationship with the record parties to be bound by the judgment"); *Dearborn Heights*, 233 Mich. App. at 127.

There is far greater identity of issues and interests here than in *Adair*, where the plaintiffs did not even know each other. Defendant and each of the state court defendants were in business together, were represented by the same counsel, and relied on the same evidence. FOF at 17-18. While Defendant complains he was fired by his counsel, that argument is disingenuous because, that counsel represented his companies – SLI, SLIM and DSLLC – throughout trial. See Tab 1, Trial Transcript at 1. Therefore, Defendant controlled the proceedings as the companies' party representative, testified as a party representative for the company defendants, and all

4

of the State Court defendants shared the same incentive to avoid findings of fraud and conversion. *Id*. at 24:12-27:16.

All issues to be litigated in this case were litigated and determined in State Court: Defendant and Kessler obtained ZB's money under false pretenses (FOF at 7-8), misrepresented business performance (*Id*. at 15), and lied about the federal investigation (*Id*. at 14), among other findings.

Collateral estoppel also binds Defendant through contractual privity. *Sloan*, 425 Mich at 295 (defining privity as "mutual or successive relationships to the same right or property"). Defendant was in privity with ZB, his companies, and Kessler as parties to the same personal guaranty, with shared access to property and personal liabilities under the loan agreements. FOF at 11-12.

An agent is also bound by a proceeding against her principal. See *Mitsubishi*, 772 F.2d at *2; *DePolo v. Greig*, 338 Mich. 703, 709–13 (1954); *Krolik v. Curry*, 148 Mich. 214, 222 (1907). Defendant testified he co-founded SLI and SLIM, is a member of DSLLC, and served at the State Court trial as their company representative. Tab 1, Trial Transcript at 24:12-27:16. He is bound as their agent.

Finally, the State Court found SLI, SLIM, and DSLLC to be alter egos of Defendant and Kessler, warranting veil piercing. FOF at 4, 17 ("Kaplan and Kessler treated <u>each other and their affiliated entities as one blob entity</u>."). As the Sixth Circuit has held, estoppel applies when a defendant is the alter ego of a previous

defendant. *Trs. of Operating Eng'rs,* 919 F.3d at 383 ("[A] contention that *A* is *B*'s 'alter ego' asserts that *A* and *B* are the same entity.").

Defendant's contention that mutuality fails because ZB represented it was taking "no action" against Defendant in State Court is without legal support; Defendant again incorrectly insists he must have been a defendant through the final judgment for collateral estoppel to apply. Response at 10.

Mutuality requires only that a party have been a party or a privy in the previous action. *Rahaim,* 324 B.R. at 34. Defendant was a privy in at least five ways. Moreover, as explained in the Motion, *Rahaim, Callender*, and *Strozewski* [ECF 25-04234-tjt, Doc. 44 at 21-22] each held that filing an answer, participating in discovery, and/or filing dispositive motions established a full and fair opportunity to litigate – Defendant did all of these.

Had Defendant and the State Court defendants prevailed, ZB would have been bound by that result. ZB prevailed, and Defendant is equally bound.

II.     **Defendant Fails to Demonstrate Why Judicial Notice of the Facts Established by the State Court is Not Warranted.**

Defendant argues judicial notice can only establish the existence of State Court proceedings, not the findings therein. Response at 14. That is incorrect. Defendant's own case, *Granader v. Public Bank*, 417 F.2d 75, 83 (6th Cir. 1969), held it appropriate to take judicial notice of a State Court's "findings of fact therein." The State Court's findings were made after a full bench trial by clear and convincing

6

evidence – a standard exceeding the preponderance standard here. They are not "subject to reasonable dispute" under Rule 201(b) because they resulted from adversarial testing, including Defendant's own testimony. See *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1082 n.6 (7th Cir. 1997).

## <u>CONCLUSION</u>

For the foregoing reasons, ZB respectfully requests that the Court grant its Amended Motion for Summary Judgment in its entirety.

Respectfully submitted,

**TAFT STETTINIUS & HOLLISTER LLP**

/s/ Kimberly Ross Clayson
Kimberly Ross Clayson(P69804)
Ethan R. Holtz (P71884)
27777 Franklin Road, Suite 2500
Southfield, MI 48034
(248) 351-3000
kclayson@taftlaw.com
eholtz@taftlaw.com

Dated: July 17, 2026

*Counsel for Plaintiff, ZB Verified Investments, LLC*

7

# TAB 1

FILED    Received for Filing    Oakland County Clerk    5/13/2026 11:39 AM

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

ZB VERIFIED INVESTMENTS, LLC,

       Plaintiff,

vs                                   Case No. 2024-207081-CB

ADAM KESSLER, JOSHUA KAPLAN,
SAMI AHMAD, DIVIDED SKY, LLC,
SUPPLY LINE INTERNATIONAL, LLC,
SUPPLY LINE INTERNATIONAL
MEDICAL, LLC, and JOHN DOES 1-10,

       Defendants.
_____/

BENCH TRIAL

BEFORE THE HONORABLE MICHAEL D. WARREN

Pontiac, Michigan – Thursday, March 5, 2026

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | ETHAN R. HOLTZ (P71884) |
| | Taft |
| | 27777 Franklin Road |
| | Suite 2500 |
| | Southfield, Michigan 48034 |
| | (248) 351-3000 |
| | |
| For the Defendants | THOMAS W. CRANMER (P25252) |
| Divided Sky, Supply | SARAH COLLEEN REASONER (P85573) |
| Line Int'l, Supply | KIMBERLY L. SCOTT (P69706) |
| Line Int'l Medical | Miller Canfield Paddock & Stone, PLC |
| and Adam Kessler: | 840 West Long Lake Road |
| | Suite 150 |
| | Troy, Michigan 48098 |
| | (248) 267-3381 |

Video Transcription Provided By:
Deanna L. Harrison, CER 7464
About Town Court Reporting, Inc.
248-634-3369

1

TABLE OF CONTENTS

WITNESSES:                                          PAGE

MICHAEL KAHAIAN
     Cross-Examination by Ms. Reasoner              05
     Redirect Examination by Mr. Holtz             12

JOSH KAPLAN
     Direct Examination by Ms. Scott               23
     Direct Examination by Ms. Scott (cont'd)      83


EXHIBITS:                                          Admitted

None.

Q    Thank you.

The Court has heard a lot about the loan with ZB and Orchard's OT testing -- OTC testing program.  You understand that today I may refer to Orchard's OTC testing program as simply the program.  Are you okay with that?

A    Yes.

Q    Okay.  And we've heard a lot about five different businesses involved with the program, and I think it would be helpful at this point to try and give some background about those entities and some understanding of how the program operated.

So let's start with the very basics, your roles of these various entities, okay?  So I want to start with your role at Divided Sky during the program.

A    I was a co-founder and a manager.

Q    Okay.  And who testified in this litigation as the corporate representative for Divided Sky?

A    I did.

Q    And typically when Mr. Kessler needed financial or operational information about the program, who would provide that information to him?

A    If it was something that came from Divided Sky, it would be me.

Q    Okay.  And what was your role at Supply Line International up through the end of 2024?

24

A    I was a manager and co-founder.

Q    And oftentimes Supply Line International is referred to as SLI, correct?

A    Yes.

Q    Okay.  Are you the only owner of SLI?

A    No.

Q    Who are the other owners?

A    There is an investment group that owned a minority interest.

Q    Okay.  And who testified in this litigation as the corporate representative for SLI?

A    I did.

Q    What was Mr. Kessler's role with SLI?

A    He was -- was not an owner of SLI.

Q    Has Mr. Kessler ever acted as an agent of SLI?

A    No.

Q    What was your role at Supply Line International Medical up through the end of 2024?

A    Also a co-founder and manager.

Q    Oftentimes SLI International Medical is referred to as SLI -- SLIM, correct?

A    Yes.

Q    Are you the only owner?

A    No.

Q    Who are the other owners?

A  There was also an investment group that had a minority share.

Q  Okay.  And who testified in this litigation as the corporate representative for SLIM?

A  I did.

Q  Was Mr. Kessler ever employed by SLIM?

A  No.

Q  Has Mr. Kessler ever acted as an agent for SLIM?

A  No.

Q  What is your role at Verified Health?

A  I was a co-founder.

Q  Any other roles?

A  Just a member.

Q  And oftentimes Verified Health is ref -- is identified as VH in the documents?

A  Yes.

Q  Okay.  Are you the only owner of Verified Health?

A  No.

Q  Who are the other owners?

A  Adam Kessler is an owner, I believe indirectly, but ultimate owner, and then a company called SoftServe.

Q  Okay.  And who testified in this litigation as the corporate representative for Verified Health?

A  I did.

Q  Do you have any roles or responsibilities at Orchard?

26

A    No.

Q    Okay.  And when you communicated with ZB or Mr. Berger or Mr. Zimmerman about the program, which hat were you typically wearing?

A    The vast majority of the time it would have been Divided Sky.  If it had been anything else, I would have identified it as such.

Q    In 2023 and 2024, did you ever act as an agent of Mr. Kessler?

A    No.

Q    Have you ever acted as an agent of Mr. Kessler?

A    No.

Q    So when I ask you questions today, I'd like you to be wearing your hat as the manager of Divided Sky.  Can you do that?

A    I can.

Q    And if you need to change hats, please let me know.

A    Okay.

Q    Okay.  So let's turn to the program itself.

          On a very high level, I want you to give some background to how this program got started.  So when did the program start?

A    It was early in -- in 2023.  I believe it probably launched the end of February, if I recall correctly.

Q    And when it launched, was it launched under a business

27